**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **3:17-CR-156** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **MARK KOMOROSKI,** | : | |
| **Defendant** | : | |

## MEMORANDUM

## I.   BACKGROUND

On April 29, 2020, defendant Mark Komoroski, an inmate at FPC-Schuylkill, Minersville, Pennsylvania, filed, *pro se*, an Emergency Motion for Compassionate Release and request for Release to Home Confinement under 18 U.S.C. §3582(c)(1)(A), based on the COVID-19 pandemic and his alleged "high risk of death from coronavirus infection in federal prison" due to his underlying sleep apnea condition, which he states requires him to use a CPAP machine, and which he characterizes as a "chronic lung disease." (Doc. 75 & Doc. 79 at 70 note of Dr. Kozicki stating that it is medically necessary for  Komoroski to have a CPAP machine due to sleep apnea. The note also indicates that Komoroski is prescribed Lipitor and Fenofibrate for high cholesterol). Defendant states that he has filed an administrative request for home confinement with the Bureau of Prisons ("BOP") as well as his instant Emergency Motion for Compassionate Release which he filed with

1

this court. Defendant attached Exhibits to his motion, including a copy of Warden's Finley's April 21, 2020 denial of defendant's March 26, 2020 request for Compassionate Release/Reduction in Sentence based on "Medical Circumstances." (Doc. 75 at 16). Defendant also attached a copy of an April 2020 decision from the District Court for the Southern District of New York, United States v. Scparta, 2020 WL 1910481, (Doc. 75 at 17-25 & 75-1), which he alleges "proves this court has jurisdiction to order the compassionate release of the prisoner" who was suffering from sleep apnea, hypertension, high blood pressure and high cholesterol, since the inmate was more susceptible to death from COVID-19. Defendant states that the court in Scparta "order[ed] the immediate compassionate release to home confinement of the prisoner" due to the COVID-19 pandemic. The court in Scparta, also held that administrative exhaustion did not bar the defendant's motion for compassionate release. The court furhter held that that the First Step Act's exhaustion requirement "is not jurisdictional" and, that "the statute's exhaustion requirement is amenable to equitable exceptions." The Scparta case provides no precedential authority for this court and, it was decided in the Second Circuit and not the Third Circuit.

Defendant states that "if [he] becomes infected with the coronavirus while in custody of the [BOP], he will face imminent death from contracting COVID-19." Defendant contends that since he is "almost 58 years old" (DOB 07/22/1962) and suffers from sleep apnea he is a risk to suffer serious illness or death if he contracts COVID-19 and that this constitutes an "extraordinary

and compelling reason" to release him from prison to home confinement. He further alleges that he does not pose any risk to the public.

In his motion, defendant Komoroski also refers to Attorney General Barr's March 26, 2020 Memorandum to the BOP regarding prioritization of home confinement for at-risk inmates due to the COVID-19 pandemic. Defendant alleges that he meets all of the factors to be considered for home confinement "as mandated by Attorney General Barr in his Memorandum", including his age, his sleep apnea, his confinement in a "minimum security federal prison camp", the length of his sentence (7-months), and he has been approved to by the BOP to be released to home confinement for the final 10% of his sentence, and his "exemplary" prison conduct. (Doc. 75 at 11-12).

Defendant states that he submitted a request to the BOP to consider him for immediate release to home confinement as compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). Defendant's request was based on "severe breathing conditions." Defendant further alleges that "his requests [to the BOP] have been ignored and not answered." (Doc. 75 at 13). However, the April 21, 2020 response defendant attached to his motion from Warden Finely belies his contention that the BOP has not responded to his request. (Id. at 16).

Further, defendant does not allege in his motion that there are any positive cases of COVID-19 of any inmate or staff at FCI-Schuylkill, including the camp where he is confined, but he alleges that the prison's proximity to New York City puts inmates in the prison at risk of the virus.

3

As such, defendant requests the court to order his immediate release from prison and to allow him to serve the remainder of his sentence in home confinement with his wife and daughter, as compassionate release pursuant to18 U.S.C. §3582(c)(1)(A).

On May 20, 2020, the court directed the government to file a response to Komoroski's motion. (Doc. 76).

On May 28, 2020, the government filed its brief in opposition to Komoroski's motion with attached Exhibits, filed under Seal by court Order, i.e., defendant's BOP medical records. (Docs. 77, 79).

Komoroski requests the court to direct the BOP to release him from prison and direct that he serve the remainder of his sentence in home confinement. According to his PSR, (Doc. 40 at 10), Komoroski resided in Nanticoke, Luzerne County, Pennsylvania, prior to his incarceration.[1]

To the extent Komoroski requests the court to direct the BOP to release him from prison to home confinement, or to amend his sentence to allow him to serve the remainder of his prison term in home confinement, due to COVID-19, his filing is a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), and it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies.

---

[1] The court notes that in Luzerne County, where it appears that Komoroski wishes to be placed on home confinement with his wife and daughter, as of June 11, 2020, there were 2,810 positive COVID-19 cases reported and 158 deaths. *See* PA Dept. of Health website.

4

To the extent Komoroski is deemed as seeking the court to order the BOP to find him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.

## II.   DISCUSSION[2]

In his present motion, (Doc. 75), defendant Komoroski requests the court to order the BOP to immediately transfer from FPC-Schuylkill to home confinement and requests the court to allow him to serve the remainder of his 7-month prison sentence in home confinement due to the COVID-19 pandemic. Komoroski's filing is a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). Komoroski states that he is in danger of contracting the virus in the prison since the CDC safety measures cannot be practiced and that if he contracts the virus he will be at risk of suffering severe complications due to his sleep apnea medical condition. Based on these

---

[2]Komoroski is currently serving a 7-month prison sentence, after he pled guilty to attempting to export a riflescope to Russia without obtaining the required license, in violation of 50 U.S.C. §1705. The court also sentenced defendant to 2 years supervised release. (Doc. 67). Komoroski was taken into BOP custody on March 6, 2020, and his projected release date from prison is October 4, 2020.

allegations, Komoroski that there exists extraordinary and compelling circumstances warranting his release from prison to home confinement.[3]

In its brief in opposition, (Doc. 77), the government initially argued that Komoroski's motion for compassionate release from prison to home confinement under 18 U.S.C. §3582(c)(1)(A), should be dismissed because he has not exhausted his administrative remedies. The government, (Id. at 9), stated that "[Komoroski] submitted a request to the warden for Compassionate Release/Reduction in Sentence on March 26, 2020. Doc. 75, at 16. The request was based on "severe breathing conditions." *Id.* The warden denied that request on April 21, 2020. *Id.* "Komoroski has not

---

[3]Since the government included in its response of all of the safety measures implemented by the BOP in response to the COVID-19 virus, (Doc. 77 at 2-9), and since this court is well-aware of all of the safety measures implemented by the BOP, *see* Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's website, they are not repeated. *See also* BOP website: www.bop.gov/coronavirus/index.jsp. The court has also reviewed the May 26, 2020 Memorandum from Ken Hyle, BOP Assistant Director/General Counsel to the Honorable Ricardo S. Martinez, Chair of the Judicial Conference Criminal Law Committee, regarding updated information from the Bureau of Prisons with respect to its response to the COVID-19 pandemic and about revised screening procedures for new inmates being confined in federal prisons to reduce the spread of the virus.

Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The government represents that as of May 28, 2020, there were no reported positive COVID-19 inmate cases and no positive staff cases at FCI-Schuylkill. (Doc. 77 at 9). FCI-Schuylkill is not listed on the BOP's website as of June 11, 2020, which the BOP has advised the court signifies that there are no staff or inmates who are COVID-19 positive.

appealed the warden's denial through the BOP's administrative-remedy process."

However, the government also noted in its brief, (Doc. 77 at 15 n. 2), that:

> In certain cases, the Government has conceded that §3582(c)(1)(A)'s exhaustion requirement is satisfied when (as here) a defendant's request is denied by the warden within 30 days of receipt and 30 days have passed since the warden's receipt. The Department of Justice is currently reviewing its position on this issue. If, during the pendency of Komoroski's motion, undersigned counsel learns that the Department has completed its review and that the Department's position would support a finding of exhaustion in this case, then counsel will notify the Court.

On June 3, 2020, the government filed a supplement to its brief and indicated that after review by the DOJ regarding its position on exhaustion, "the Government no longer contends that Komoroski failed to satisfy §3582(c)(1)(A)'s exhaustion requirement", and that "[t]he Court should nonetheless deny Komoroski's motion on the merits." (Doc. 81).

Notwithstanding the government's withdrawal of its argument regarding exhaustion in this case, the court must still consider whether Komoroski has exhausted his BOP administrative remedies. As stated, Komoroski received a response from the Warden denying his request for compassionate release, and he has not yet appealed the response from the Warden. Also, since the Warden timely responded to Komoroski's March 26, 2020 request on April 21, 2020, Komoroski cannot directly file an appeal with the court without exhausting his administrative remedies. Only if the Warden

7

fails to respond to the inmate's request within 30 days, can the inmate file his motion for compassionate release with the court without exhausting his BOP administrative remedies.

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Recently, in United States v. Early, 2020 WL 2572276, *3 (W.D.Pa. May 21, 2020), the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in Early, *id.*, also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control

8

the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id.* (quoting Raia, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id.*

Also, to the extent that Komoroski, just like the defendant in the Early case, *id.* at *2, is deemed as contending that he has exhausted his administrative remedies because the Warden formally denied his request within the 30-day time frame provided for in the First Step Act, he is not correct.

The court in Early, *id.* at *3, explained:

> Defendant's reading of the statute is misplaced. Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* United States v. Nance, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, United States v. Bolino, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, United States v. Bevans-Silva, 2020 WL 2475079 (S.D. Ga. May 13, 2020); United States v. Samuels, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); United States v. McCallister, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); United States v. Rodriguez, —— F.Supp.3d ——, ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—

when their warden never responds to their request for relief."); <u>United States v. Mattingley</u>, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); <u>United States v. Keith</u>, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5, 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

In <u>United States v. Solomon</u>, 2020 WL 2768897, *3 (W.D.Pa. May 28, 2020), the court stated, "[c]ourts have interpreted [18 U.S.C. §3582(c)(1)(A)] to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." (citing <u>Early</u>, 2020 WL 2572276, at *3). This court concurs with <u>Early</u> and <u>Solomon</u>, as well as the cases to which they cite, and finds that Komoroski must wait to file a motion with the court after he fully exhausts all administrative rights to appeal the Warden's denial of his administrative request for compassionate release since the Warden responded to his request within 30 days from the date he submitted his request. *See id.* (citing <u>Early</u>, 2020 WL 2572276, at *3).  *See also* <u>United States v. Martin</u>, 2020 WL 3065302, *3 (S.D.Miss. June 9, 2020) (Court "agree[d] with those courts interpreting the 'lapse' provision [i.e., the language in 18 U.S.C. §3582(c)(1)(A) providing that the court can consider a motion for compassionate release after the "lapse of 30 days from the receipt of such a request by the warden"] as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30

days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citing Early, 2020 WL 2572276, at *3; United States v. Ng Lap Seng, ---F.Supp.3d---, 2020 WL 2301202, *5-6 (S.D.N.Y. May 8, 2020)). In Ng Lap Seng, 2020 WL 2301202, *5-6, the Court held that section 3582(c)'s "exhaustion requirement is clearly statutory and therefore mandatory" and, did not agree with courts that have "interpreted 'lapse of 30 days from the receipt of such a request by the warden,' 18 U.S.C. §3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." The court stated that this "first reading would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." Id. The court in Ng Lap Seng then "agree[d] with the courts that have interpreted Section 3582(c)(1)(A)'s 'lapse' language as requiring the BOP's failure to respond to a prisoner's request for a compassionate release motion within thirty days, giving the court discretion to hear a compassionate release motion if the BOP has failed to timely consider the request." Id. at *6. The court also explained that "given the BOP's regulations regarding its

deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days", and that "[i]f Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act." *Id.* The court then concluded that "[b]ecause I read Section 3582(c)(1)(A)'s 'lapse of 30 days' language to require the BOP's failure to respond to a compassionate release request within thirty days of its submission to the BOP, I conclude that Ng must fully exhaust the BOP appeals process to satisfy Section 3582(c)(1)(A)'s exhaustion requirement", and that the defendant "has not yet satisfied this exhaustion requirement due to his failure to fully appeal the warden's denial of his request." *Id.* at *7. The court in <u>Ng Lap Seng</u> also indicated that if Section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, then the government can waive the affirmative defense of exhaustion. Conversely, if Section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, as this court finds it is based on <u>Raia</u>, then the government cannot waive the exhaustion issue and the court must be satisfied that it has jurisdiction to consider the merits of a defendant's motion for compassionate release.

This court concurs with the court in <u>Ng Lap Seng</u> as well as the courts cited therein, *id.* at *6 (string citations omitted), which have held that "the exception to exhaustion in section 3582(c)(1)(A) 'provides that Defendants can bypass exhaustion altogether if the warden fails to act on an

12

administrative application for compassionate release within 30 days.'" However, if the warden responds to defendant's request within 30 days, then defendant must exhaust all of his BOP administrative rights to appeal the warden's decision as provided by BOP Program Statement No. 5050.50, and "the same exhaustion procedure for routine administrative grievances (i.e., the use of forms BP-9 through BP-11) applies to requests for compassionate release." *Id.* at *7 (citing 28 C.F.R. § 542.15(a)). The court notes that since the court in Ng Lap Seng, *id.* at *7, detailed all of the required administrative remedies an inmate must pursue before filing a motion for compassionate release with the court, as well as citations to the applicable websites, they are not repeated herein. *See also* United States v. Martin, 2020 WL 3065302 (S.D.Miss. June 9, 2020) ("For the reasons articulated by the court in Ng Lap Seng, this Court agrees with those courts interpreting the 'lapse' provision as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute. In this case, Martin says his request was initially denied within the 30-day window, and he does not demonstrate that he fully exhausted that denial. In this procedural posture, the Court 'may not modify [his] term of imprisonment.'") (citing 18 U.S.C. §3582(c)(1)(A)).

This court also interprets Section 3582(c)(1)(A)'s "'lapse of 30 days'" language to require the BOP's failure to respond to a compassionate release request within thirty days of its submission to the BOP", Ng Lap Seng, *id.* at *7, and it finds that defendant Komoroski "must fully exhaust the BOP appeals process to satisfy Section 3582(c)(1)(A)'s exhaustion requirement" since the Warden did respond to his request within 30 days. Here, the court finds that defendant has not yet satisfied the exhaustion requirement since he has failed to fully appeal the Warden's April 21, 2020 denial of his March 26, 2020 request. In short, simply because defendant submitted his compassionate release request more than 30 days before he filed his instant Doc. 75 motion, does not establish that the 30-day requirement for exhaustion of administrative remedies has been met.

As mentioned, the government filed a supplemental response stating that based on the DOJ's recent review of its position on Section 3582(c)(1)(A)'s exhaustion requirement, it is no longer contending that Komoroski failed to satisfy the exhaustion requirement. (Doc. 81). It thus appears that the government is taking the view that Komoroski can file his motion for compassionate release simply because he waited for 30 days after he submitted his request to the Warden. As discussed, the court does not agree with this interpretation of the 30-day lapse requirement in Section 3582(c)(1)(A).

Also, to the extent that the government is deemed as attempting to waive the exhaustion requirement in this case and requests the court to

14

consider the substantive merits of defendant's motion, neither the government nor the court can waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional. *See* <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020) (Third Circuit held that courts cannot consider a request for compassionate release under the First Step Act until the inmate has exhausted his BOP administrative remedies.); <u>United States v. Davila</u>, 2020 WL 2839860, *2 (W.D.Pa. June 1, 2020) ("The exhaustion requirement that applies in this case is explicitly set forth in §3582(c)(1)(A), and, therefore, cannot be excused."); <u>United States v. Pitt</u>, 2020 WL 2098272, *2 (M.D.Pa. May 1, 2020) ("The court cannot overlook [defendant's] failure to exhaust his remedies, as the Third Circuit recently emphasized the need for 'strict adherence' to the exhaustion requirement in the wake of the COVID-19 pandemic.") (citing <u>Raia</u>, 954 F.3d at 597).

Thus, the government has amended its initial position regarding exhaustion, as it noted it may do, (*see* Doc. 77 at 15 n. 2), and now essentially contends that because Komoroski submitted his request for compassionate release to Warden Finley on March 26, 2020, "and defendant's request was denied by the warden within 30 days of receipt and 30 days have passed since the warden's receipt, Section 3582(c)(1)(A)'s 'lapse of 30 days' language is satisfied, permitting judicial consideration of [defendant's] motion." <u>Ng Lap Seng</u> at *5. As such, the government is construed as interpreting "lapse of 30 days from the receipt of such a request by the warden, 18 U.S.C. §3582(c)(1)(A), to mean that the statute's

15

exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." *Id.* However, as discussed, this court has interpreted the "lapse" language differently and concurs with Early and Lg Lap Seng, as well as the other courts cited in these cases, and finds that "Defendants can [only] bypass exhaustion altogether if the warden fails to act on an administrative application for compassionate release within 30 days." *Id.* at *6 (citations omitted). But if the warden responds to the inmate's request for compassionate release within 30 days of receiving it, as in the present case, then the inmate must exhaust all of his BOP administrative remedies before seeking judicial relief. As such, the court's "interpretation [] foreclose[s] judicial consideration of [defendant's] motion until [he] 'fully exhausted all administrative rights to appeal [the] failure of the Bureau of Prisons to bring a motion on [his] behalf ....'" *Id.*

In the present case, just as in Early, 2020 WL 2572276, at *3, and in Lg Lap Seng, "Warden [Finley] responded to [Komoroski's] [March 26, 2020] request within 30 days of receipt [i.e., on April 21, 2020]." (Doc. 75 at 16). Thus, Komoroski "is obligated to complete the administrative appeal process", and the court finds that "[he] has failed to exhaust his administrative remedies." *Id.* It is of no moment that more than 30 days have passed since the warden received Komoroski's request, as the government now appears to contend satisfies the 30-day lapse language, since this court

has not agreed with the courts which have found that the "lapse of 30 days from the receipt of such a request by the warden," 18 U.S.C. §3582(c)(1)(A), "to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request [for] compassionate release [], regardless of whether the BOP has [responded to the request.]" Ng Lap Seng at *5.

Thus, it is clear that Komoroski has not satisfied the requirement under 18 U.S.C. §3582(c)(1)(A), since the Warden did respond to his request for compassionate release within 30 days (i.e., 26 days) and since Komoroski then failed to appeal the Warden's response *via* the BOP administrative remedy process.

Since Warden Finley timely denied defendant's request, he was required to file an appeal with the BOP Regional Director, within 20 calendar days of his receipt of the Warden's response. 28 C.F.R. §542.15(a). Then if the Regional Director denied his appeal, defendant was required to appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final administrative appeal in the process. *Id. See also* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)).

In short, as in Early and Solomon, since Warden Finley responded to defendant's request for compassionate release within 30 days of receipt, "[]he must exhaust h[is] administrative remedies before []he may seek relief in this Court." Solomon, 2020 WL 2768897, *3-4.

In the present case, similar to <u>Early</u>, <u>Solomon</u>, and <u>Cordaro</u>, 2020 WL 2084960, *5, <u>Ng Lap Seng</u>, the court finds that defendant must exhaust all of his available BOP administrative remedies challenging the Warden's denial of his release to home confinement. As in <u>Cordaro</u>, where the inmate was denied release by Finley on April 18, 2020, this court found that the inmate must still pursue his remaining BOP administrative remedies to challenge the decision denying him release to home confinement. Also, as in <u>Cordaro</u>, 2020 WL 2084960, *5, "[t]he circumstances of [Komoroski's] case fit squarely within the purposes of the exhaustion requirement." (citation omitted). *See also* <u>Early</u>, 2020 WL 2572276, *4 ("The fact remains, however, that Defendant must exhaust his administrative remedies before he may seek relief in this Court.").

In his reply brief, defendant Komoroski raises disturbing allegations, without evidentiary support, that the prison staff at FCI-Schuylkill refused to allow him and the other inmates to appeal the Warden's denial of their requests for compassionate release, and threatened him if he tried to do so. (Doc. 80 at 2-5). In particular, defendant alleges:

> During the period from April 21, 2020 through April 28, 2020, and daily thereafter, through the present day, the Warden of the federal prison where the defendant is incarcerated has ordered that no prisoner is allowed to file any appeal of the Warden's denial of the prisoner's Request for Administrative Remedy concerning any prisoner's request for compassionate release. Specifically, the government has failed to inform the Court that, immediately upon his receipt of the Warden's denial of his Request for Administrative Remedy, concerning his request for compassionate release, the defendant, on April 21-April 22,

18

2020, asked the Corrections Officer and Counselor who delivered the Warden's denial to the prisoner to provide the prisoner with the "BP-10" form, the "Regional Administrative Remedy Appeal" form, which allows the prisoner to appeal the Warden's denial to the BOP Regional Director. When the defendant/petitioner asked those agents of the Warden to please give him the form allowing him to appeal to the BOP Regional Director the Warden's denial of his Request for Administrative Remedy concerning his request for compassionate release, those agents of the Warden told the defendant, through the agency of the Corrections Officer and Counselor at the prison, that under no circumstances will the defendant be allowed to file any appeal to the Regional Director of the Warden's denial of his Request for Administrative Remedy concerning his request for compassionate release. Specifically, the government failed to inform the Court that, when the defendant asked the Corrections Officer and Counselor to give him the "BP-10" form, the "Regional Administrative Remedy Appeal" form, the Corrections Officer and Counselor refused to give any such form to the defendant and, moreover, the defendant was threatened that, if he files any such appeal to the Regional Director, he will be punished through placement in the "hole," the Special Housing Unit, and he will face the loss of good time and other prison privileges, including his prison job, as retaliation for his exercise of his grievance rights. The grievance procedure as practiced in the BOP mandates the BOP BP-10 form, the "Regional Administrative Remedy Appeal" form, must be given by the Counselor to the prisoner and initialed by the Counselor in order to allow the prisoner to appeal to the Regional Director the Warden's denial of his Request for Administrative Remedy. In this case, the defendant received a direct order, from the Warden, through the agency of the Corrections Officer and the Counselor, that he is not allowed, under any circumstance, to appeal to the Regional Director of the BOP the Warden's denial of his request for compassionate release. The government seeks to hide this fact from the Court. It is thus clear the defendant has exhausted his rights under the grievance procedure. He has no further right to file any administrative remedy, because he has been ordered by the BOP that he may no longer exercise that right. Thus it is clear he has exhausted his administrative remedies.

Defendant concludes by stating that "since the Warden has terminated the grievance process concerning any prisoner's request for compassionate release, defendant has clearly exhausted all his administrative remedies and rights afforded by the BOP in this matter." (Id.).

Conspicuously missing from the government's supplemental response regarding exhaustion, (Doc. 81), is any mention of defendant's serious allegations that he was prevented by prison staff from appealing Warden Finley's decision denying his request for compassionate release and, that he was threatened with punishment if he tried to appeal.

While it is clear that the defendant did not appeal Warden's Finley's April 21, 2020 decision denying his request for compassionate release through the BOP administrative remedy process, as required, and it is clear that defendant was aware of the process and his obligation to complete it, it is well-settled (with respect to a civil rights action and the PLRA's exhaustion requirement) that if the BOP staff thwarts an inmate's attempt to exhaust his administrative remedies, the inmate will be excused from exhaustion. *See* Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018) (Third Circuit held that "administrative remedies are not 'available' under the PLRA [for a civil rights action] where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm.") (citations omitted). "[T]he Supreme Court too has recognized that 'intimidation' by prison officials can 'thwart inmates from taking advantage of a grievance process' and thus

20

render that process 'unavailable.'" *Id.* at 268 (citing <u>Ross v. Blake</u>, ---U.S.---136 S.Ct. 1850, 1860 (2016)).

No doubt that the burden is on the inmate alleging that he was deterred from exhausting his administrative remedies under the PLRA and, that "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

Here, court need not determine if the exhaustion requirement for motion for compassionate release under §3582(c)(1)(A) should be deemed as not available where a prison official allegedly prevents or thwarts an inmate from appealing a response, or threatens him if he appeals. Nor will the court decide if the prison staff prevented defendant Komoroski from appealing the Warden's decision in this case, as he alleges. Defendant's March 26, 2020 request to the Warden for Compassionate Release/Reduction in Sentence was based on his "Medical Circumstances" claiming that he had "severe breathing conditions." (Doc. 75 at 16). Since defendant's request does not appear to be also based on the COVID-19 pandemic, as well as some of the other reasons stated in his instant motion, (Doc. 75), and since the time period in which defendant was permitted to appeal the Warden's April 21, 2020 decision has now lapsed, *see* 28 C.F.R. §542.15(a), defendant will be directed to submit a new request to Warden Finley for compassionate release specifically due to the COVID-19

pandemic, as well as the reasons detailed in his Doc. 75 motion. *See* Pitt, 2020 WL 2098272, *2, (Court found that defendant's previous request to the warden for the BOP move for his compassionate release under 18 U.S.C. §3582(c)(1)(A), could not be considered for purposes of exhaustion with respect to defendant's subsequent motion based on COVID-19 since his previous request "was not based on the COVID-19 pandemic or any other medical reasons.") The court in Pitt, *id.*, stated: "One of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue. To properly exhaust administrative remedies, therefore, the administrative complaint must raise the same claims asserted in the federal court filing." (quoting United States v. Valenta, 2020 WL 1689786, at *1 (W.D.Pa. Apr. 7, 2020) (citing Gadra-Lord v. Doe, 736 F. App'x 30, 32 (3d Cir. 2018)). *See also* United States v. Wilson, 2020 WL 1975082, *4 (E.D.Pa. April 24, 2020) ("To enable Bureau of Prisons to make this informed decision envisioned by Congress, the Bureau of Prisons must be fairly put on notice of the grounds for compassionate release.").

If the Warden fails to respond to defendant's new request within 30 days, defendant will be allowed to file a new motion for compassionate release with the court under 18 U.S.C. §3582(c)(1)(A). If the Warden responds to defendant's new request within 30 days, and denies it, then defendant must exhaust all of his BOP administrative remedies before he files another motion with this court. In the event that defendant's request is

denied and defendant contends that he is prevented by prison staff from appealing the Warden's decision, defendant will be directed to immediately notify the court.[4]

Additionally, the court finds that even if the exceptions to the exhaustion requirement applied in this case, and they do not since "exhaustion of [defendant's] administrative remedies is mandatory", Early, 2020 WL 2572276, *3, none exist especially since, as noted, there are presently no positive cases of the COVID-19 virus reported at FCI-Schuylkill as of June 11, 2020.

As such, Komoroski's motion for compassionate release from prison to home confinement under, 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), will be dismissed without prejudice for failure to exhaust all of his BOP administrative remedies. See Cordaro, 2020 WL 2084960, *5; Early, 2020 WL 2572276, *4. See also United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative

---

[4]Although defendant does not substantiate his allegations (and does not meet an inmate's burden as specified in Rinaldi, 904 F.3d at 269) that his BOP administrative remedies were thwarted by prison staff at FCI-Schuylkill, that he was threatened, and that there is a systematic prevention of inmate's appealing the denials of their requests for compassionate release at the prison, the court takes these allegations very seriously since it has found that exhaustion is mandatory. As such, the court forewarns the prison staff that such conduct, as alleged, will not be tolerated.

23

remedies with respect to his motion for compassionate release "[b]ecause the Warden explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)); United States v. Edwards, 2020 WL 1987288 (M.D.Tn. April 27, 2020) (Court denied motion for compassionate release without prejudice until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied); United States v. Early, 2020 WL 2572276 (W.D.Pa. May 21, 2020). Here, Komoroski has not exhausted all of his BOP administrative remedies as required prior to his instant filing.

Secondly, the court cannot yet determine if Komoroski has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence, since he has not exhausted his administrative remedies. See United States v. Zukerman, ---F.Supp.3d---, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020) ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First

24

Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in <u>Raia</u>, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in <u>Raia</u>, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* <u>Feiling</u>, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in <u>Raia</u>] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); <u>Smith</u>, *supra* (same); <u>Edwards</u>, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in <u>Raia</u> that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies

25

forecloses compassionate release was not "mere 'dicta'"). The court in <u>Early</u>, 2020 WL 2572276, *3, also recently stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing <u>United States v. Raia</u>, 954 F.3d 594 (3d Cir. 2020)).

Moreover, the Third Circuit in <u>Raia</u>, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* <u>Feiling</u>, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); <u>United States v. Soto</u>, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); <u>United States v. Boyles</u>, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); <u>United States v. Wright</u>, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by

26

COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); United States v. Edwards, 2020 WL 1987288 (MD.Tn. April 27, 2020) (after an extensive review of recent cases filed in light to the COVID-19 pandemic, the court concluded that "[it] cannot consider the Motion [for compassionate release] until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied", and denied the Motion without prejudice to refiled it once exhaustion was completed); United States v. Johnson, ---F.3d---, 2020 WL 1663360, *6 (D.Md. April 3, 2020) (Court held that since prisoner seeking relief under §3582(c)(1)(A) did not fully exhaust his administrative remedies, it lacked jurisdiction over motion and would not consider whether prisoner presented "extraordinary and compelling reasons" warranting his release from prison until exhaustion was completed).

Thus, Komoroski's motion for compassionate release must be dismissed for lack of jurisdiction since he has clearly not exhausted all of his administrative remedies under §3582(c)(1)(A).

Additionally, insofar as Komoroski is liberally construed as relying on the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced. Any such request by Komoroski under the CARES Act will be denied since the court has no authority to direct the BOP to place him in home confinement and the

determination of which defendant qualifies for home confinement under the CARES Act is with the BOP Director.

As the court in <u>United States v. Sawicz</u>, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* <u>United States v. Doshi</u>, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." <u>Valenta v. Ortiz</u>, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home

confinement under [Section 602 of the First Step Act] §3624(c)(2)." <u>Furando</u>, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020,[5] the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; <u>Cruz</u>, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; <u>Cordaro</u>, 2020 WL 2084960, *6.

## III.   CONCLUSION

Insofar as Komoroski's Motion is for Compassionate Release or for Reduction of Sentence and for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 75)**, it will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Komoroski will be

---

[5] *See* <u>Furando</u>, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

directed to file a new request with Warden Finley for compassionate release based on the COVID-19 pandemic as well as the other reasons stated in his Doc. 75 motion. Insofar as Komoroski is construed as seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 17, 2020**

17-156-01