UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES

V.

MARK KOMOROSKI,

    Defendant.

FILED
SCRANTON

JUL 2 1 2020

PER_____
      DEPUTY CLERK


Case Number: 3:17-CR-156

(Judge Mannion)


**Emergency Motion Pursuant to Rule 60(b)(3) and (6) of the Federal Rules of Civil Procedure, Requesting the Court Grant the Defendant's Emergency Motion for Compassionate Release, (1) because of the merit of the Emergency Motion for Compassionate Release, (2) because of the existence of a defect in the integrity of the prior proceedings, and (3) because the Federal Bureau of Prisons is presently attempting to murder the defendant through denial of his life-saving CPAP machine, which he needs for survival—all in retaliation for his exercise of his First Amendment rights through his filing of his Motion for Compassionate Release before this Court.**

1

Affidavit and declaration under penalty of perjury of the Movant, Mark Komoroski:

I, Mark Komoroski, hereby certify and declare, under penalty of perjury, that the following is true and correct. Executed this 21st day of July, 2020, by the undersigned movant, Mark Komoroski:

The movant brings this motion pursuant to Rule 60(b)(3) and (6) of the Federal Rules of Civil Procedure, requesting the Court grant the movant's emergency motion for compassionate release, because of the existence of a serious defect in the integrity of the prior proceedings.

The movant brought his emergency motion for compassionate release before this Court on April 29, 2020. On June 17, 2020, this Court dismissed the motion without prejudice. In its decision dismissing the movant's motion without prejudice, the Court declared the Court based its ruling on the government's assertion that the movant's Request for Administrative Remedy, made to the Warden of the federal prison where the movant is incarcerated, was made by the movant solely because the movant supposedly claimed he suffered from "severe breathing conditions." Thus, the Court concluded, in its decision dismissing the movant's motion without prejudice, the defendant had never raised, in his Request for Administrative Remedy to the Warden, the issue he raised in his Emergency Motion for Compassionate Release before the Court: the issue that, because of his susceptibility to infection with the coronavirus COVID-19, because he suffers from the chronic lung disease of sleep apnea, which requires he use a CPAP ventilator machine at night, he should be granted compassionate release. Thus the Court held the Court lacked jurisdiction to hear the matter, because the Court held the movant had never properly raised the issue in his

Request for Administrative Remedy to the Warden, as required by our case law concerning exhaustion of administrative remedies. The Court held that before the Court could hear the matter, the movant must properly present the issue to the Warden.

The truth is that the movant was illegally prevented by the Warden from filing an appeal to the Regional Director of the BOP of the Warden's denial of his Request for compassionate release. The truth is also that the movant is eligible for consideration by the Court for compassionate release due to his susceptibility to COVID-19, because he most definitely raised, in his Request for compassionate release filed with the Warden, the fact he deserves consideration for compassionate release precisely because of his unique and compelling suffering of chronic lung disease (sleep apnea) which makes him especially subject to risk of death through infection with the coronavirus COVID-19 that is presently rampaging through our nursing homes and prisons, environments which present virtual petri dishes for incubation of the deadly coronavirus COVID-19. The fact is that the government, through the Warden's denial of the movant's Request for compassionate release, committed a fraud on the Court when the government, through the Warden's denial of the movant's Request, falsely claimed the movant had raised in his Request for compassionate release only the issue that he was having unspecified "severe breathing conditions." This false and misleading statement of the Warden caused the Court to dismiss the movant's motion for compassionate release without prejudice. The Court, in its decision, specifically noted the movant's allegation the Warden illegally denied the movant's right to pursue administrative remedies, if proved, was a "disturbing" event that could satisfy the exhaustion of administrative remedies requirement. The Court, through its decision, further cited to Rinaldi v. United States,

904 F.3d 257, 267 (3d Cir. 2018), concluding that thwarting of administrative remedies

by the government, if proved, constitutes obstruction of the administrative remedy

process that absolves the movant of the requirement for exhaustion of remedies.

However, the Court ruled that it was not necessary for the Court to consider the

movant's claim the government had illegally thwarted his filing of his Administrative

Remedy appeal to the Regional Director of the BOP, because the Court held the

movant had never, in his original Request for Administrative Remedy to the Warden,

raised the issue the movant sought to bring before the Court: the issue that he is

deserving of consideration for compassionate release by the Court due to his particular

susceptibility to infection with COVID-19, and risk of death therefrom, if he becomes

infected with COVID-19 in the confines of federal prison, where it is impossible for him

to practice social distancing, because he suffers from a chronic lung disease (sleep

apnea) which the Centers for Disease Control criteria places him at high risk of death

were he to become infected with the coronavirus COVID-19. Thus, the Court held, since

the issue had never been properly raised and presented to the Warden, the Court

declared the Court lacked jurisdiction to hear the matter, and could not consider

whether or not the government had illegally thwarted the movant's exhaustion of

administrative remedies, and thus the movant must refile a proper administrative

remedy request for compassionate relief with the Warden, and properly exhaust his

administrative remedies, before the Court could gain jurisdiction to consider the

movant's Motion for compassionate release due to susceptibility to infection with the

coronavirus COVID-19. But the Court's decision in this matter rested on the

government's false assertion the movant had raised in his original request for

4

compassionate release, presented to the Warden, solely his claim he supposedly
deserved compassionate release solely because he suffered from unspecified "severe
breathing conditions." This assertion of the Warden was a lie, a fraud on the Court. The
Warden, and thus the government, lied to the Court. The movant's request for
Administrative Remedy, presented to the Warden, in fact declared:

"DEAR MR. WARDEN, I AM ASKING YOU FOR COMPASIONATE RELEASE
BECAUSE OF THE COMPLICATIONS THAT MAY OCCUR IF THE VIRUS [COVID-19]
GETS INTO THIS SYSTEM BECAUSE OF MY SLEEP APNEA."

That was the actual language of the movant's Request for Administrative Remedy. The
Warden's Response, the Warden's denial, of the movant's Request for Administrative
Remedy, failed to address the movant's claim he deserved compassionate release
solely because of his susceptibility to infection with the coronavirus COVID-19. The
Warden's Response thus committed a fraud upon the Court.

This issue of the Warden's fraud upon the Court was never raised previously by the
movant because the movant understood the record of his Request for Administrative
Remedy was clear, that the movant had indeed raised the issue properly through the
language of his Request for Administrative Remedy to the Warden. The movant had no
way of knowing this issue would become an issue central to the decision of the Court in
this matter. The movant assumed the record was clear, that the movant had indeed
properly raised the issue, through his Request for Administrative Remedy to the
Warden, seeking compassionate release solely because his suffering from sleep apnea
makes him especially susceptible to infection with the coronavirus and especially
susceptible to suffering life-threatening complications were he to become infected with

the coronavirus in the breeding ground that occurs in our prisons where social
distancing is impossible and coronavirus infections spread like wildfire.

In Gonzalez v. Crosby, 545 U.S. 524 (2005), Justice Scalia, writing for the Court,
teaches us a movant may bring a meritorious motion for Relief from judgment in this
matter when a "defect in the integrity" of the prior proceedings has occurred. Justice
Scalia teaches us, in Gonzalez v. Crosby, 545 U.S. 524 (2005):

"Rule 60(b) [of the Federal Rules of Civil Procedure] allows a party to seek relief from a
final judgment, and request reopening of his case, under a limited set of circumstances
including fraud, mistake, and newly discovered evidence. Rule 60(b)(6), the particular
provision under which petitioner brought his motion, permits reopening when the
movant shows 'any ... reason justifying relief from the operation of the judgment' other
than the more specific circumstances set out in Rules 60(b)(1)–(5). See Liljeberg v.
Health Services Acquisition Corp., 486 U. S. 847, 863, n. 11 (1988); Klapprott v. United
States, 335 U. S. 601, 613 (1949) (opinion of Black, J.). The mere recitation of these
provisions shows why we give little weight to respondent's appeal to the virtues of
finality. That policy consideration, standing alone, is unpersuasive in the interpretation of
a provision whose whole purpose is to make an exception to finality. The issue here is
whether the text of Rule 60(b) itself, or of some other provision of law, limits its
application in a manner relevant to the case before us. . . .  [A] Rule 60(b) motion
attacks, not the substance of the federal court's resolution of a claim on the merits, but
some defect in the integrity of the federal . . . proceedings."

6

Here, in the present case before the Court, the "defect in the integrity" of the prior proceedings is the fraud on the Court committed by the government through the Warden's false statement the movant raised in his Request to the Warden for compassionate release only the supposed issue he deserved compassionate release because of unspecified "severe breathing conditions," when in fact the movant raised, through his Request for Compassionate Release to the Warden, the issue he deserved consideration for compassionate release specifically because of his susceptibility to injury from infection with the coronavirus COVID-19 because he suffers from sleep apnea.

Rule 60(b) of the Federal Rules of Civil Procedure ("Relief from a Judgment or Order") declares:

"(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

7

(6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.

(1) Timing. A motion under Rule 60(b) must be made within a reasonable time—and for

reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or

the date of the proceeding.

(2) Effect on Finality. The motion does not affect the judgment's finality or suspend its

operation.

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or

proceeding;

(2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of

the action; or

(3) set aside a judgment for fraud on the court."


    The movant thus properly brings this motion pursuant to Rule 60(b)(3) and (6).

    The motion is meritorious and should be granted because of the fact the

government, through the Warden's false Response, has committed a fraud on the

Court, through the government's lie the movant raised in his Request for compassionate

release to the Warden only the issue he suffered from unspecified "severe breathing

conditions," when in fact he raised the issue he later presented to the Court: the issue

he deserves consideration for compassionate release because his suffering from sleep

apnea, a severe, chronic lung disease, places him at high risk of death and injury if he

becomes infected in prison with the coronavirus COVID-19. The Warden's Response

attempted to hide this fact from the Court: the fact the movant properly raised in his Request for compassionate release the issue that his unique susceptibility and danger of death and injury from infection with COVID-19 serves as a compelling reason for the Court, and the government, to grant the movant compassionate release. In fact, while the movant's motion for compassionate release was under consideration by the Court, the government, on June 15, 2020, told the movant he had been granted compassionate release. On June 15, 2020, the government told the movant he was scheduled to be released to home confinement for compassionate release on July 8, 2020. In fact, the government had previously, on May 27, 2020, in response to the movant's filing of his Emergency Motion for Compassionate Release with this Court, conducted a home site survey, through the offices of the government's Probation Officer, Ned Leonard, which certified the movant's home as a proper residence for the movant's home confinement for compassionate release. Then, on June 17, 2020, the Court issued its ruling in this matter, dismissing the movant's motion without prejudice. The movant did not file a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, seeking "reconsideration" of the Court's dismissal of the movant's motion, solely because the government had informed the movant he had won compassionate release.

The movant had no way of knowing, at that time, the government instead planned to conduct a reprehensible, treacherous campaign of retaliation against the movant for his exercise of his First Amendment right to seek redress of grievances.

Through his filing of his Motion for Compassionate Release to the Court, and especially through his filing of his Reply to the government's Response to his Motion,

the movant exposed the government's egregious malfeasance--the government's denial of the prisoner's right to file his appeal to the Regional Director of the BOP of the Warden's denial of his Request for compassionate release. This exposure of the government's malfeasance angered the government, which had previously vowed to retaliate against the movant if he had the temerity to exercise his First Amendment right to seek redress of grievances from the Court through his asking the Court for compassionate release. The movant, through his motion for compassionate release, and through his later Reply to the government's Response, specifically informed the Court the government had threatened to retaliate against the movant for his exercise of his First Amendment right to petition the government for redress of grievances in this matter. The retaliation threatened by the government has now occurred. In fact, the situation now presents an issue of life and death before this Court, an issue that cries out for the Court to provide justice in this case.

The movant does not state this lightly: the government is presently attempting to murder the movant in retaliation for his exercise of his First Amendment right to file his grievances before this Court. In retaliation for his exercise of his First Amendment right to file his motion before this Court, seeking compassionate release, the government has retaliated against the movant by presently attempting to commit criminal murder of the defendant. The movant, in his Reply to the government's Response to his motion for compassionate release with this Court, declared the government had threatened to retaliate against any prisoner who had the temerity to try to exercise their right to seek redress of grievances concerning the Warden's order the Warden would henceforth accept no further Requests for Administrative Remedy concerning requests for

compassionate release. The Warden specifically ordered no prisoner is allowed to appeal the Warden's denial of any prisoner's request for compassionate release to the Regional Director of the Federal Bureau of Prisons (BOP), as is allowed by BOP policy. The government has now retaliated against the movant for his exercise of his First Amendment rights before this Court. In retaliation for his exercise of his First Amendment rights before this Court, the government has thrown the movant into the "Hole," the Segregated Housing Unit (SHU), at the maximum security prison at Schuylkill, PA, adjacent to the minimum security federal prison camp where he was previously incarcerated. The government took this action in retaliation against the movant for his exercise of his First Amendment right to petition the government for redress of grievances—for his filing of his emergency motion for compassionate release before this Court, and especially for his exposure of the criminal acts the government had taken to deny prisoners their right to file grievances through the BOP's administrative remedy process. In retaliation for his exercise of his First Amendment right to file his actions with this Court, the government has taken away the movant's right to have his life-saving CPAP machine, the machine he needs to use while he sleeps at night, so he can breathe. Every night, the movant presently swelters in 95-degree heat, with no air conditioning, in the confines of a tiny SHU cell where he has been told he will be imprisoned until his release date on Oct 4, 2020. Every night, his cell-mate awakens him many times, because he ceases to breathe, because the government, in retaliation for his exercise of his First Amendment right to bring his motion for compassionate release before this Court, has told him he will henceforth be denied his right to receive proper medical care. The government is thus trying to illegally

11

murder and execute the movant in retaliation for his exercise of his First Amendment

right to seek redress of grievances from this Court, solely because the movant exposed

the fact the government is preventing prisoners at the minimum security federal prison

camp from appealing denials of their Requests for compassionate release to the

Regional Director of the BOP. This Court, in its decision dismissing the movant's motion

without prejudice, properly noted the government's egregious malfeasance in thwarting

the movant petitioner from completing the grievance process would be "disturbing" if

proved, and would constitute illegal prevention of exhaustion of administrative remedies,

thus excusing the movant from exhaustion of administrative remedies. See: Rinaldi,

supra. The Court in its ruling held the movant would need to present convincing

evidence the government engaged in illegal thwarting of the prisoner's exhaustion of

administrative remedies. That evidence is presented through this present petition,

through the affidavit and declaration under penalty of perjury provided by the movant,

which is his only means of presently asserting the evidence.

The movant prays this Court hold an evidentiary hearing on this matter, a hearing at

which testimony be taken from prisoners who witnessed the atrocities committed by the

Warden and his underlings at the federal prison camp where the movant was formerly

incarcerated, a hearing at which the Warden and his minions are called to account for

their misdeeds in this matter. They are presently operating as rogue agents entirely

outside the pale of established BOP policy and regulations, through their denial of

prisoners' rights to use the administrative remedy process for redress of grievances.

Most important, the movant prays this Court provide relief from the Court's previous

judgment in this matter. The movant prays this Court issue a judgment on the merits of

the prisoner's motion seeking compassionate release. At present, the movant has been told by BOP authorities he will not be granted any good conduct time, and he will serve the rest of his prison sentence in the "Hole," and he will be denied his life-saving CPAP machine, until his release on October 4, 2020, because of a fraudulent disciplinary incident concocted by the government as a pretext to deny the movant the compassionate release he had been granted on June 15, 2020 by the government—the compassionate release he was previously told would be effected on July 8, 2020.

Instead of granting the movant compassionate release, the government has chosen to retaliate against the prisoner by attempting to murder him, through denial of his life-saving CPAP machine, which this Court has previously noted is necessary for his survival. The prisoner movant has been told by BOP authorities he will not be allowed to have his CPAP machine. He will thus have to suffer risk of death through suffocation until his release on October 4, 2020.

The movant prays this Court independently consider and grant the movant immediate compassionate release.

After this Court issued its ruling of June 17, 2020 in this matter, the government, on or about July 2, 2020, threw the movant into the "Hole," the SHU, the Segregated Housing Unit in the maximum security federal prison at Schuylkill, PA. The pretext for the government's retaliation against the movant for his exercise of his First Amendment rights—retaliation for his filing of his motion for compassionate release with this Court—was a supposed violation by the movant of the prison's rules on contraband, a violation allegedly committed by the movant—an event which patently did not occur. The movant was instructed he must mow the grass at the federal prison camp. He was further

ordered he must talk with a civilian truck driver and tell the truck driver when he must

stop and when the truck driver is allowed to proceed into the prison. This was the job he

was ordered to do by the prison authorities at the minimum security federal prison

camp. He diligently obeyed and did his job. While he was doing his job, a prison

corrections officer claims he saw the truck driver give the movant a package of

contraband. The corrections officer was 50 yards away at the time. The movant was

immediately arrested by the corrections officer. Of course, no contraband was found.

But, under our Supreme Court's "some evidence" rule, which means no evidence is

necessary at all to convict a prisoner of a disciplinary offense, other than the attestation

of a corrections officer, a prisoner in a federal prison, accused of a violation, has no

right to ever gain justice. He is presumed and indeed almost always found guilty in the

kangaroo court system that exists in our federal prison system concerning supposed

disciplinary infractions. The movant was thus found guilty of an offense he did not

commit, in retaliation for his exercise of his First Amendment right to bring his action

before this Court. There is absolutely no justice that can ever be granted to the movant

through the filing of any administrative remedies in that matter, because the movant's

prison sentence, imposed by this Court, will end on Oct. 4, 2020, long before the

resolution of any administrative remedy proceedings could possibly occur. He was

convicted, without evidence, of attempting to introduce contraband into the prison. He

received a false conviction for a "300 series" disciplinary infraction. As punishment he

has been ordered confined to the SHU, without his CPAP machine, until his release

date on Oct. 4, 2020. All of his approximately one month of good conduct time earned

has been taken away from him also as punishment. This exceedingly harsh punishment

is being exacted on him solely in retaliation for his exercise of his First Amendment rights before this Court.

The movant prays this Court grant this motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The movant prays this Court grant the movant's meritorious motion for compassionate release. The movant prays this Court truly save the movant's life. Otherwise, there is the distinct possibility of risk the movant may succumb to death, not only from the coronavirus COVID-19, but from the cold-blooded murder of the movant presently being attempted by the government through the government's denial of his life-saving CPAP machine, which he needs for survival.

The government is presently attempting to murder the movant solely because he had the temerity to exercise his First Amendment right to seek redress of grievance from this Court.

The movant prays this Court grant the movant compassionate relief for the compelling reasons he has delineated in his motion for compassionate release, previously filed with this Court. This Court did not sentence the movant to death in federal prison. This Court sentenced the defendant to 7 months in federal prison. He entered prison in March of 2020. He has served approximately 5 months of his 7-month prison sentence.

The movant prays the Court grant the movant immediate compassionate release. Respectfully submitted by the movant.

This affidavit and declaration under penalty of perjury is sworn this 21st day of July, 2020, by the undersigned, Mark Komoroski,

_____.

Certificate of Service

The movant, Mark Komoroski, declares he has served the enclosed Motion on the opposing party, whose name and address are listed below, by sending a copy of the document to the opposing party through the US mail, with first-class postage attached, on this 21st day of July, 2020.

Address of opposing party:

Carlo D. Marchioli

Assistant U.S. Attorney

PA 309217

228 Walnut Street, Suite 220

P.O. Box 11754

Harrisburg, PA 17108

Certified and declared by Mark Komoroski:

7/20/2020 .